## BANK v. BRIER.

### (*Knoxville.*  September 26, 1895.)

1. GENERAL ASSIGNMENT.  *What is not.*

   A conveyance is not a valid general assignment for the benefit of
   creditors under Acts 1881, Chapter 121, although it incorpo-
   rates, in its body, lists of the debtor's property and debts,
   which fails to state anywhere, either as part of the instrument
   or in the affidavit by which it is verified, that all of the debtor's
   property is embraced and conveyed.  (*Post, pp. 332–335.*)

   Act construed: Acts 1881, Ch. 121.

   Cases cited and approved: Scheibler v. Mundinger, 86 Tenn., 689;
   Lookout Bank v. Noe, 86 Tenn., 22; Hill, Fontaine & Co. v.
   Alexander Bros., 16 Lea, 496.

2. FRAUDULENT CONVEYANCE.  *What is.*

   A conveyance, without actual fraud, of a stock of goods and
   other property, to secure a debt much larger in amount than
   their value, is void as against the creditors of the grantor,
   where it permits the latter to sell the goods in the usual course
   of trade until the maturity of the debt, subject to the control
   of the trustee, without requiring bond, where the trustee's
   control is merely nominal, and he has no real right of posses-
   sion until after the debt matures, and when the debtor, in the
   meantime, changes, replenishes, and deals with the stock of
   goods as he chooses.  (*Post, pp. 335–338.*)

   Cases cited and approved: Bank v. Haselton, 15 Lea, 233; Bank
   v. Ebbert, 9 Heis., 153; Lowenstein Bros. v. Love, 16 Lea, 658;
   Doyle v. Smith, 1 Cold., 20; McCrasly v. Hasslock, 4 Bax., 1.

3. SAME.  *Void in part, void in toto.*

   And, in such case, the conveyance is void not only as to the stock
   of goods, but as to the other property of whatever nature em-
   braced therein.  (*Post, p. 338.*)

Bank v. Brier.

Cases cited and approved: Simpson v. Mitchell, 8 Yer., 419; Richmond v. Crudup, Meigs, 581; Trabue v. Willis, Meigs, 584.

FROM FENTRESS.

Appeal from Chancery Court of Fentress County. B. M. WEBB, Ch.

HENDERSON & JOUROLMON, WELCKER & HUDSON, and DENNY & CURRY for Complainants.

TURNER, YOUNG & SMITH, and YOUNG BROS. for Defendants.

WILKES, J. These are attachment bills (except that of Murray, Dibrell & Co., which is a cross bill), consolidated and heard together. The original bills attach a stock of merchandise and certain real estate, and attack two conveyances of the same made by Brier, on the ground that one purports to be a general assignment under the Act of 1881, Chapter 121, but is invalid and void because it does not comply with the requirements of that Act, and the other on the ground that it is fraudulent and void in law and fact.

The Chancellor, in the Court below, held both deeds valid, and refused to grant complainants any relief in the way of personal judgments for their debts, or to. set aside the conveyances and subject

the property to sale.   Murray, Dibrell & Co. filed a cross bill, seeking to enforce their rights under both the general and the special assignment.  Complainants in the original bills appealed, and have assigned errors.

This case has been considered by the Court of Chancery Appeals, where it was conceded that error had been committed in not giving the personal judgments asked for, and the controversy has narrowed down to the questions as to whether the conveyances are valid upon their face or are invalid and void.

The Court of Chancery Appeals held the conveyance which purported to be a general assignment, invalid, and the special deed of trust for the benefit of Murray, Dibrell & Co. void, and reversed the decree of the Chancellor, gave personal judgments for the debts sued on, and ordered the attached property sold, and proceeds, as well as funds in the receiver's hands, applied according to the priorities of the different attachments, and remanded the cause for the execution of the decree.   From this decree of the Court of Chancery Appeals, defendant, Brier, and Murray, Dibrell & Co. have appealed to this Court.

It is not contended that the assignment first mentioned is a special one, but the contention is that it is general, and in substantial compliance with the Act of 1881, Chapter 121.   The conveyance has no separate inventory attached, but contains in

its body a list of accounts, judgments, notes on various persons, a storehouse and the stock of goods in it, conveyed subject to the special mortgage given to Murray, Dibrell & Co., and subject to the homestead right. It recites the names of persons to whom debts are owing, and the amounts said to be due, and further states that the conveyance is for the benefit of all creditors named, and any other who may have been overlooked in making out the inventory hereto attached. The deed is signed by Brier and wife, and there follows an affidavit, as follows:

"STATE OF TENNESSEE, ⎰     Comes H. D. Brier and
  *Fentress County.* ⎱ makes oath in due form of law that the facts set forth in the foregoing inventory are true.

               "Signed,     HUBERD D. BRIER.
   "Sworn to before me April 13.

                         "STEPHEN LAKE."

An impression of a seal appears, with this inscription: "Fentress County, Tennessee, Stephen Lake, Notary Public."

There is no other attempt at an inventory than as appears in the body of the instrument, and there is no statement in the instrument that all the grantor's property is covered and conveyed by the deed, nor that 'there is' a full and complete inventory or schedule of the same, the only statement looking in this direction being a preamble to the conveyance,

reciting that the grantor is desirous to assign his stock in trade and property in general for the benefit of his creditors.

It will be seen that the oath is simply to the effect that the facts set forth in the inventory are correct, but it is even left in doubt what the grantor means by this language, as he refers to his list of creditors as an inventory. This is in no sense a compliance with the requirements of the Act of 1881, as to the necessary inventories and oaths to accompany a general assignment, to make it valid. *Scheibler* v. *Mundinger*, 2 Pick., 689; *Lookout Bank* v. *Noe*, 2 Pick., 22; *Hill, Fontaine & Co.* v. *Alexander Bros.*, 16 Lea, 496. And the deed of conveyance must be held invalid as a general assignment.

The special conveyance for the benefit of Murray, Dibrell & Co. conveys the storehouse and stock of goods in it to secure a debt of $717, to be paid in four months from its date. It provides that Brier is to continue to manage and control said stock of goods, subject to the orders of J. H. Douglass, trustee, and as his agent, until the debt matures, and the goods and proceeds of same are to be kept in stock, unless the debts are paid, till the debt matures, when Douglass is to take possession, advertise and sell so much as will pay the debt secured. In the answer of Murray, Dibrell & Co., they say that, after the said deed was executed, the goods were left in Brier's possession, and he continued to

sell the goods therein conveyed, and to buy and place in stock other goods of like character, which were mixed with the other stock in trade. The goods covered by the conveyance were valued at some $2,500. The value of the house and lot does not appear.

In the case of *Bank of Rome* v. *Haselton et al.*, 15 Lea, 233, the Court, in a case similar to this, uses this language: "So far as appears, the purpose of the parties in executing this mortgage was to secure a valid debt, and not dishonestly to defraud other creditors, and the property conveyed did not exceed in value the amount of the debt." It then refers to the case of *Bank* v. *Ebbert*, 9 Heis., 153, where a similar deed was held void, because, it was said, "Although there is no specific intent to defraud any particular creditors, and no actual fraud in fact, yet, the debtor being allowed to remain in possession of the goods without bond, there were such facilities for fraud contracted for on the face of the deed, that it must be held to be wanting in legal good faith." It proceeds: "Any conveyance that puts the property of the debtor in the name of a third party, so far as the legal title goes, and leaves it in his possession and under his control, with the right to continue to use it in trade, and to sell and dispose of it as before the conveyance, lacks the essential element to sustain such conveyance as against the creditor."

The case of *Lowenstein Bros.* v. *Love*, 16 Lea,

658, is directly in point, and the Court held a pro-vision similar to the one now in question, fraud-ulent, upon the ground that it was, in effect, a res-ervation for the benefit of the vendor, "that the business was to be prosecuted, and new goods from time to time added for an indefinite period, and the trustee was autnorized to sell the goods in the or-dinary course of business. . . Such a provision, being chiefly for the benefit of the assignor, will have the effect to avoid the assignment." *Doyle* v. *Smith*, 1 Cold., 20; *Tennessee National Bank* v. *Ebbert & Co.*, 9 Heis., 153; *McCrasly & Co.* v. *Hasslock*, 4 Bax., 1.

In the case at bar, we have goods to the value of $2,500, besides the house and lot, conveyed to secure a debt of $717, and allowed to remain in control of the debtor, and to be sold by him in the usual course of trade, the proceeds to be re-tained and held by him, but no bond required, and the stock to be sold, changed, replenished, and dealt with as he might see fit. It is said that all this has to be done subject to the control of Douglass, the trustee; but it is evident this control was only nominal and not real, and he had no real right of possession till after the debt matured; and, as a matter of fact, this control did not prevent or in-terfere with the attempted disposition of the stock by the general assignment made by Brier, the debtor. Evidently these unusual provisions were for the ben-efit of the debtor, and not to promote the interest

of creditors in general, and only in a subordinate degree the interests of Murray, Dibrell & Co.

The language of the Court in 15 Lea, 233, is very appropriate to this case: "Such facilities for fraud are afforded, even if no actual fraud was intended, as will make such a conveyance contrary to public policy, and render it void on its face." The conveyance being void as to the stock of goods, it is void as to the house and lot covered by the same conveyance. *Simpson* v. *Mitchell*, 8 Yer., 419, *Richmond* v. *Crudup*, Meigs, 581; *Trabue* v. *Willis*, Meigs, 584, and other cases.

It results that the decree of the Chancellor is reversed and set aside, and the decree of the Court of Chancery Appeals is affirmed, and the cause remanded for the execution of the decree. The costs will be paid as directed by the Court of Chancery Appeals.